Simpson v. Harley.

---

J. H. SIMPSON, APPELLANT, V. CON HARLEY, APPELLEE.

FILED JUNE 27, 1923. No. 22413.

1. **Brokers:** COMMISSIONS. A commission cannot be collected by an agent for rejected services, if he wilfully disregarded, in a material respect, an obligation imposed upon him by the law of agency.

2. **Trusts:** CONSTRUCTIVE TRUST. "A person gratuitously or officiously assuming as agent or trustee to control or manage the property or interests of another is as firmly bound by the implied terms of his confidential relation as one who is regularly employed and paid." *Nebraska Power Co. v. Koenig,* 93 Neb. 68.

APPEAL from the district court for Antelope county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Williams & Kryger,* for appellant.

*J. J. Harrington,* contra.

Heard before MORRISSEY, C. J., ROSE, ALDRICH and GOOD, JJ., BEGLEY, District Judge.

ROSE, J.

This is an action by plaintiff to recover a broker's commission of $2,980 for procuring a person ready, able and

willing to purchase from defendant 480 acres of land in
Holt county and a lease for 160 acres of school land
therein at the net price of $22,020, or $44 an acre for the
land and $900 for the lease. Plaintiff pleaded two con-
tracts in writing. One was dated September 18, 1919.
According to its terms he was sole agent of defendant
and entitled to a commission of all the purchase price in
excess of $22,020. The other contract pleaded by plain-
tiff was dated September 19, 1919, and contained an
agreement by defendant to sell, and by H. A. Callies to
buy, the land and the lease for $25,000, being $50 an
acre for the land and $1,000 for the lease. In the answer
to the petition defendant admitted the signing of the
contracts, but alleged that plaintiff procured them by
fraud which prevented the sale, made the services of the
agent worthless and defeated the claim for compensation.
Upon a trial of the issues the district court directed a
verdict in favor of defendant and dismissed the action.
Plaintiff has appealed.

It is first argued that the answer admits facts en-
titling plaintiff to recover compensation, that it fails to
show defendant was damaged by the fraud pleaded, and
that therefore there is no defense to the cause of action
stated. That position is clearly untenable. The action
is one to recover compensation for the services of an
agent. He and his principal are the only suitors.
Rights of third persons are not involved. The answer
pleads in detail facts showing that the contracts on
which plaintiff's right to recover is based were procured
by fraud which defendant promptly denounced in ad-
dition to rejecting the services of plaintiff upon dis-
covering his perfidy. The answer states a defense under
the following rule of law:

"A commission cannot be collected by the agent for his
services as such, if he has wilfully disregarded, in a
material respect, an obligation which the law devolves
upon him by reason of his agency." *Jansen v. Williams,*
36 Neb. 869.

The only other question presented arises from the failure of the trial court to submit issues of fact to the jury. There was a conflict of evidence on some phases of the fraud pleaded, but undisputed proofs show conclusively that plaintiff was not entitled to recover compensation.

The testimony on behalf of defendant tended to prove that the preliminary negotiations between him and plaintiff resulted in an agreement authorizing a sale of the land for $45 an acre and of the lease for $1,000; that the commission was $1 an acre for the land and $100 for the lease, or $580; that plaintiff inserted the false terms in the contracts and tricked defendant into signing them in ignorance of the facts. On this phase of the controversy there was a conflict in the testimony, but other evidence not disputed showed that plaintiff was not entitled to compensation. The following conclusions are properly drawn from undisputed facts:

Before defendant signed the contracts pleaded in the petition, confidential relations extending to agency and terms of sale existed between him and plaintiff. Making use of the information thus acquired, plaintiff procured from Callies the latter's signature to a contract for the purchase of the land for $50 an acre, and of the lease for $1,000. Plaintiff had also procured from Callies for defendant a cash payment of $2,000. This is one of the contracts signed by defendant and pleaded in plaintiff's petition. While in possession of Callies' agreement and the cash payment of $2,000, which belonged to defendant in the event of a sale, plaintiff afterward went to defendant September 18, 1919, and, without disclosing that Callies had signed an agreement to purchase the land for $24,000, or $50 an acre, and the lease for $1,000, procured defendant's signature to the contract appointing plaintiff sole agent to find a purchaser, though one had already been found, and authorizing a commission of all the purchase price in excess of $44 an acre for the land and of $900 for the lease. This contract of agency

gave plaintiff, upon his own solicitation, at least four days to procure a purchaser already procured. While the negotiations between plaintiff and defendant were in progress immediately preceding the signing of the contract of agency, both parties considered the compensation of the agent an open question and discussed it as such. At that time plaintiff, according to his own testimony, said he had priced the land and could not raise the price, but did not disclose what that price was. The day following the signing of the contract of agency, September 19, 1919, plaintiff obtained defendant's signature to the contract of purchase previously signed by Callies, without disclosing that the latter, before the contract of agency was signed, had agreed to purchase the land for $50 an acre and the lease for $1,000. This is the other contract pleaded in the petition. Through a conference with Callies, defendant soon learned what plaintiff, the agent, had concealed. Callies then refused to pay more than $45 an acre and plaintiff demanded a commission of $2,980 without regard to sale or price. With the consent of Callies, defendant refused to perform the contracts or to accept the services of the agent or to ratify the agent's acts. Defendant had received the cash payment of $2,000 but returned it to Callies. Had defendant known in advance of Callies' agreement to pay $50 an acre for the land and $1,000 for the lease, neither contract would have been executed. The conclusions outlined are drawn from undisputed evidence.

It was the duty of the agent under the circumstances to disclose the facts which he concealed in procuring his principal's signature to the contracts. The failure to do so was a breach of confidential relations. His obligations in that particular did not begin with the execution of the written instruments. He had previously assumed, without authority in writing, to act for defendant in negotiating for a sale, in procuring a competent purchaser and in accepting a cash payment of $2,000. To procure a personal advantage at the expense of defendant,

he acted on information acquired through confidential relatio. s previously established. If his services were legally authorized, he was bound by the law of agency to disclose what he had done for his principal. If he assumed to act as agent before he was authorized to do so, his conduct is measured by the following rule of law:

"A person gratuitously or officiously assuming as agent or trustee to control or manage the property or interests of another is as firmly bound by the implied terms of his confidential relation as one who is regularly employed and paid." *Nebraska Power Co. v. Koenig,* 93 Neb. 68.

That relation, however created, required of the agent a disclosure of the facts concerning the subject-matter of his agency. While both parties were considering the open subject of compensation during the negotiations immediately preceding the signing of the contract of agency, it was the duty of the agent to disclose that, assuming to act as such, he had procured a purchaser for $50 an acre and received for defendant a cash payment of $2,000. With knowledge of the facts defendant would not have signed the contracts and he was not obliged to perform either on demand of the agent. With the consent of the purchaser he had a right to reject the services of the agent and refuse payment therefor. He properly pursued this course. From a legal standpoint plaintiff gained nothing by taking advantage of information obtained from his principal in confidence to procure in writing a subsequent agreement exacting for himself the illicit fruits of silence when he should have spoken. His accountability to his principal is the same whether in abusing his trust he acted under a valid employment or officiously assumed to be an agent. The trial court made no mistake in directing a verdict. The dismissal of the action is therefore

AFFIRMED.